UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 4:17-CR-256-2 |
| | ) | |
| | ) | (BRANN, D.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| TED JOHNSON, JR., | ) | |
| Defendant | ) | |

MEMORANDUM FOR COVID-19 BAIL DECISION
*Defendant Johnson's Motion for Bail, Doc. 98*

I.   INTRODUCTION

Before the Court is Mr. Johnson's Motion for Presentence Release (Doc. 98). Along with the Motion, a Brief (Doc. 99), the required notice (Doc. 103) requesting a hearing, the Government's Brief in Opposition (Doc. 104), and a supplemental document by the Government (Doc. 105) were filed. For the reasons detailed in this Memorandum, the request for a hearing and release from detention will be denied.

II.   BACKGROUND & PROCEDURAL HISTORY

This case began with the indictment of two people, including Ted Johnson, Jr., on August 24, 2017. (Doc. 1). Mr. Johnson had his Initial Appearance and Arraignment on October 25, 2017. (Doc. 24). At that time, a detention hearing was scheduled for October 31, 2017. (Doc. 28). At the detention hearing, Mr. Johnson's counsel conceded that Mr. Johnson could not overcome the presumption of

detention. (Doc. 37). That same day, I ordered Mr. Johnson detained pending trial. (Doc. 38).

On October 26, 2017, Judge Brann issued a Scheduling Order (Doc. 29) which scheduled, among other things, jury selection and trial for December 4, 2017. After twelve motions to continue (Docs. 30, 40, 42, 44, 56, 49, 52, 54, 56, 58, 60, 62), all filed by Defendants, jury selection and trial were scheduled for November 4, 2019.

On September 30, 2019, the Government filed notice that a plea agreement had been reached with Mr. Johnson. (Doc. 64). On October 15, 2019, a change of plea hearing was held wherein Mr. Johnson pled guilty to Count 3 of the indictment. (Doc. 69). At this time, Mr. Johnson has not been sentenced.

On April 14, 2020, Mr. Johnson filed a Motion for Presentence Release (Doc. 98) and a Brief in Support (Doc. 99). That same day, I issued an Order instructing the parties to confer by telephone to determine if a joint resolution could be reached. On April 15, 2020, Mr. Johnson filed Notice (Doc. 103) that a joint resolution could not be reached regarding his continued detention. On April 17, 2020, the Government filed a Brief in Opposition (Doc. 104). That same day, the Government filed a Supplement (Doc. 105) to its Brief in Opposition.

III. COURT PROCEDURE FOR COVID-19 CASES

Anticipating a significant number of requests for reconsideration of bail in light of the COVID-19 pandemic, the Court instituted an expedited procedure to hear

these cases in an orderly and deliberate fashion. The filing of a bail motion citing COVID-19 as a reason for release from detention will be specifically designated and a docket entry will automatically notify counsel about the expedited procedures. That entry was made in this case on April 14, 2020.

## IV. STANDARD OF REVIEW

Mr. Johnson has entered a guilty plea in this matter. Thus, Mr. Johnson is no longer a pretrial detainee, as he is awaiting sentencing. Mr. Johnson's continued detention is to be analyzed under 18 U.S.C. § 3143, which provides:

(a) Release or Detention Pending Sentence.—

(1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

(2) The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (c) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless—

(A)

> > (i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
> > (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and
> 
> (B) The judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

An individual detained under Section 3143 may challenge their detention under 18 U.S.C. § 3145(c), which provides in relevant part:

> A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145(c).

V. REVIEW OF PREVIOUS BAIL DECISION

The original Order of Detention was filed on October 31, 2017, after a detention hearing. (Doc. 38). At the hearing, defense counsel conceded that Mr. Johnson had a detainer in Michigan. *Id.*

VI. DISCUSSION OF THE COVID-19 PANDEMIC

We are mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents.[1] We are also cognizant that the

---

[1] World Health Organization, "WHO characterized COVID-19 as a pandemic" March 25, 2020, available at

President of the United States has declared a national emergency and that the Governor of the Commonwealth of Pennsylvania[2] has also declared a state of emergency to address the needs of the nation and the Commonwealth respectively. We also recognize that public health officials have strenuously encouraged the public to practice "social distancing," to hand-wash and/or sanitize frequently, and to avoid close contact with others—all of which presents challenges in detention facilities. *See United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857 *2 (D. Md. Mar. 17, 2020). As of April 4, 2020, 24 cases have been issued around the country citing *Martin*. Of the 24 cases that cite *United States v. Martin,* only three cases released the detainee, 20 cases detained the defendant, and one case granted bail review. In *United States v. Davis*, the judge denied the government motion for

---

https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen

[2] Governor Thomas Wolf proclaimed the existence of a disaster emergency throughout the Commonwealth pursuant to 35 Pa.C.S. §7301(c) on March 6, 2020. He ordered all non-essential business in the Commonwealth to close on March 20, 2020, and he extended the closure of non-essential businesses and schools "indefinitely" to slow the progression of the pandemic. "Gov. Wolf and Sec. of Health Expand 'Stay at Home' Order to Carbon, Cumberland, Dauphin and Schuylkill Counties, Extend School Closures Indefinitely," March 30, 2020, available at https://www.governor.pa.gov/newsroom/gov-wolf-and-sec-of-health-expand-stay-at-home-order-to-carbon-cumberland-dauphin-and-schuylkill-counties-extend-school-closures-indefinitely/. That Stay at Home Order was extended to all 67 counties on April 2, 2020 to be effective thru April 30, 2020. https://www.pa.gov/guides/responding-to-covid-19/#StayatHomeOrder (last accessed April 4, 2020).

pretrial detention because the detention facility already had cases of COVID-19 and the individual was not a flight risk and posed no serious threat to the community. *United States v. Davis*, No. ELH-20-09, 2020 WL 1529158 (D.Md. Mar. 30, 2020). The case also relied heavily on expert opinion that pretrial facilities are poorly equipped to manage the highly contagious and potentially deadly coronavirus. *Id.* Two out of the three cases were people detained due to immigration proceedings. See *Basank v. Decker*, No. 20-cv-2518 AT, 2020 WL 1481503, (S.D.N.Y. Mar. 26, 2020) and *Coronel, et al. v. Decker, et al.*, No. 20-cv-2472 AJN, 2020 WL 1487274 (S.D. N.Y. Mar. 27, 2020). Additionally, there was one case that only granted review of bail hearings to be assessed on a case to case basis. See *Karr v. State*, No. 4FA-19-00872CR, 2020 WL 1456469 (Alaska Ct. App. Mar. 24, 2020).

In a precedential opinion analyzing a COVID-19 release request in the context of the compassionate release provisions of the First Step Act the Third Circuit concluded that COVID-19 risk alone does not require release where the prison system has a plan in place to deal with the pandemic.

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. *See generally* Federal Bureau of Prisons, *COVID-19 Action Plan* (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid-19.jsp. Given BOP's shared desire for a safe and healthy prison environment,

we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance. And given the Attorney General's directive that BOP "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic," we anticipate that the exhaustion requirement will be speedily dispatched in cases like this one. Memorandum from Attorney Gen. to Dir., Bureau of Prisons 1 (Mar. 26, 2020), https://www.justice.gov/file/1262731/download. So we will deny Raia's motion.

*U.S. v. Raia,* 20-1033, slip op. at 8 (3d Cir. April 2, 2020)

On March 31, 2020, Judge Jones of this court ordered the immediate release of fourteen men and women held in ICE civil detention in Pike, Clinton and York County facilities. According to Judge Jones, "Each of the petitioners suffers from chronic medical conditions and faces an imminent risk of death or serious injury if exposed to Covid-19." *Thakker v. Doll*, 1:20-cv-0480, slip op. at 2 (M.D. Pa. March 31, 2020. Ruling on their habeas "conditions of confinement" petitions[3] he found that "…a remedy for unsafe conditions need not await a tragic event." *Thakker v. Doll*, 1:20-cv-0480, slip op. at 6 (M.D. Pa. March 31, 2020). His review of the safety procedures at these three immigration facilities found they were insufficient to

---

[3] Petitioners invoked the jurisdiction of the Court under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (original jurisdiction), 28 U.S.C. § 2241 (habeas jurisdiction), and Article I, Section 9, clause 2 of the United States Constitution (the Suspension Clause) (Doc. 1, p. 6).

overcome the speculative risk of infection and death for an "imminent irreparable harm" finding in the TRO context.

> The Petitioners' claim is rooted in imminent, irreparable harm. Petitioners face the inexorable progression of a global pandemic creeping across our nation—a pandemic to which they are particularly vulnerable due to age and underlying medical conditions. At this point, it is not a matter of *if* COVID-19 will enter Pennsylvania prisons, but *when* it is finally detected therein. It is not unlikely that COVID-19 is already present in some county prisons—we have before us declarations that portions of the Facilities have been put under ineffective quarantines due to the presence of symptoms similar to COVID-19 among the inmate population. Indeed, we also have reports that a correctional officer at Pike has already tested positive for COVID-19. (footnotes omitted).
>
> . . . .
>
> Based upon the nature of the virus, the allegations of current conditions in the prisons, and Petitioners' specific medical concerns, detailed below, we therefore find that Petitioners face a very real risk of serious, lasting illness or death. There can be no injury more irreparable.

*Thakker v. Doll*, 1:20-cv-0480, slip op. at 8,9 (M.D. Pa. March 31, 2020).

Judge Jones cites several immigration detention cases where release has been ordered. *Thakker v. Doll*, 1:20-cv-0480, slip op. at 18-20 (M.D. Pa. March 31, 2020. He balanced the public interest in continued detention this way: "Finally, the public interest favors Petitioners' release. As mentioned, Petitioners are being detained for civil violations of this country's immigration laws." *Thakker v. Doll*, 1:20-cv-0480, slip op. at 23 (M.D. Pa. March 31, 2020.

In concluding that immediate release was required in these fourteen cases Judge Jones said:

> In times such as these, we must acknowledge that the *status quo* of a mere few weeks ago no longer applies. Our world has been altered with lightning speed, and the results are both unprecedented and ghastly. We now face a global pandemic in which the actions of each individual can have a drastic impact on an entire community. The choices we now make must reflect this new reality.
>
> Respondents' Facilities are plainly not equipped to protect Petitioners from a potentially fatal exposure to COVID-19. While this deficiency is neither intentional nor malicious, should we fail to afford relief to Petitioners we will be a party to an unconscionable and possibly barbaric result. Our Constitution and laws apply equally to the most vulnerable among us, particularly when matters of public health are at issue. This is true even for those who have lost a measure of their freedom. If we are to remain the civilized society we hold ourselves out to be, it would be heartless and inhumane not to recognize Petitioners' plight.

*Thakker v. Doll*, 1:20-cv-0480, slip op. at 24 (M.D. Pa. March 31, 2020).

The language of this case is strong and persuasive in the civil detention context.[4] However, to apply this reasoning to prisons and jails across the board in all criminal cases is a much different matter. Different interests must be balanced when a criminal defendant has been detained only after a finding that no condition

---

[4] The Government appealed Judge Jones's decision to the Third Circuit and requested an administrative temporary stay. The Third Circuit granted the temporary stay request within hours. On April 21, 2020, the Third Circuit issued an Opinion concluding that it has jurisdiction to hear the Government's appeal of Judge Jones's decision. The Third Circuit will address the merits of the Government's appeal after the parties have had the opportunity to brief the issues. *See Hope v. Warden York County Prison*, No. 20-1784, 2020 WL 1922372 (3d Cir. Apr. 21, 2020).

or combination of conditions will assure the presence of the defendant and the safety of the community. The balancing is likewise different when a criminal defendant is serving a sentence. The question of civil detention, early parole or compassionate release is not before me. This is a decision about bail during a pandemic.

I believe I must make an individualized determination as to whether COVID-19 concerns are compelling in a particular case to justify temporary release.

VII. FLIGHT RISK AND DANGER TO THE COMMUNITY

I first note that Mr. Johnson remains a flight risk and a danger to the community. Mr. Johnson is unable to prove by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of the community if released. In fact, Mr. Johnson does not address this issue in his Brief in Support. Instead, Mr. Johnson focused his arguments on "changed circumstances" as a result of the COVID-19 Pandemic.

Regarding flight risk, the Government argues:

As shown by a review of Johnson's criminal history, he has contacts in at least 4 states. He has used numerous aliases. FBI NCIC records indicate that Johnson has used the following names in the past in conjunction with the criminal justice system including: Jermaine Love, Jermaine Love Church, Victor Newman, and David Johnson. The substantive nature of his criminal past includes crimes such as giving false information to law enforcement, flight, and escape, all of which suggest he is a flight risk.

He was arrested by the U.S. Marshals in the present matter in Georgia (sic). According to the bail services report, Johnson was not compliant at the time of his arrest and refused to be fingerprinted.

> Finally, at the time of his arrest on the instant matter he was in absconder status as a parolee with the State of Michigan Department of Corrections who [had] a detainer on Johnson until February 2021.
>
> Nothing about the COVID-19 pandemic limits the defendant's incentive to flee or mitigate the risk that he might do so. The defendant remains subject to significant penalties upon conviction, which raise concerns about him failing to appear. Indeed, the defendant's asserted belief that detention increases his chances of infection suggests that his incentives to avoid punishment and incarceration have increased since the detention hearing. Furthermore, monitoring a defendant's location – or tracking him down were he to abscond – adds another set of burdens to the work of law enforcement and probation officers who are already laboring under increasingly difficult conditions in light of the pandemic. Accordingly, the Government maintains that the defendant remains a flight risk, and his concerns regarding COVID-19 do nothing to alter that assessment. If anything, the defendant's risk of flight has become more acute due to the emergence of COVID-19.

(Doc. 104, pp. 20-21).

> Regarding danger to the community, the Government argues:
>
> Johnson was an active participant in a series of armed Hobbs Act robberies including one in State College, PA in which two co-conspirators fired handguns near the employees of the store they were robbing. This alone shows the danger that Johnson represents to the community. Johnson also has a lengthy criminal history. The history includes [matters] from Georgia[, Michigan, Ohio, and Pennsylvania].
>
> . . . .
>
> [N]othing about the COVID-19 pandemic reduces the defendant's danger to others. The Bail Reform Act is structed to ensure not only that the defendant's liberty interests are taken into account, but also that those interests are balanced against the interests of community safety. Just as the defendant urges the Court to consider his vulnerability specific to COVID-19, the Court should also consider the risk of harm

to the community if he were released, a community that is arguably more vulnerable to criminal and other antisocial activity at this time.

*Id.* at pp. 17-19.

I find the Government's arguments regarding flight risk and danger to the community to be persuasive. Thus, I find by clear and convincing evidence that Mr. Johnson remains a flight risk and a danger to the community.

VIII. WHETHER EXCEPTIONAL REASONS EXIST WARRANTING PRESENTENCE RELEASE OF MR. JOHNSON

Mr. Johnson fails to clearly show that there is an exceptional reason why his continued detention is inappropriate. Mr. Johnson describes the dangers of COVID-19, the increased risks of COVID-19 transmissions in prisons, and how he is a high risk for infection based on his medical history – notably asthma and suffering a stroke.

    A. SPECIFIC HEALTH CONCERNS OF THIS DEFENDANT

Mr. Johnson alleges that he is particularly vulnerable to COVID-19:

Mr. Johnson has previously, while being detained in Muskegeon Detention Facility in Michigan, had a stroke and needed to be hospitalized. Further, he is currently suffering from high blood pressure and asthma. Due to those medical conditions, he currently takes medications to control these conditions. He takes an inhaler for his asthma, HCTX, Amlodipine and metoprolol for high blood pressure and to prevent another stroke/heart attack. The Defendant had previous to incarceration, also been on a C-PAP machine due to sleep apnea. Since incarceration, client has not been allowed to have this particular machine at Columbia County Prison. Considering COVID-19 affects primarily the respiratory system and Mr. Johnson has numerous on-going respiratory conditions, his sleep apnea, which is currently being

untreated as we speak, he is extremely vulnerable and likely to need hospitalization should he become sick with COVID-19.

(Doc. 99, pp. 5-6).

Although Mr. Johnson alleges he suffers from asthma, he also admitted to daily cannabis use (Pretrial Services Report, p. 3 dated 10/04/17) before his incarceration.

The Government responds by arguing that Mr. Johnson would face the same health risks if released from Columbia County Prison and that Columbia County Prison has taken careful steps to protect and insulate inmates from COVID-19. I address the conditions at Columbia County Prison below.

We remain sympathetic to Mr. Johnson's concerns regarding COVID-19 and the possibility of health complications, but "[s]uch speculation does not constitute a 'compelling reason' for temporary release." *United States v. Loveings*, Cr. No. 20-0051, 2020 WL 1501859, at *3 (W.D. Pa. Mar. 20, 2020). District courts in the Third Circuit have reached that same conclusion even in cases where the defendant indicated respiratory conditions. *United States v. Pritchett*, CR 19-280, 2020 WL 1640280, at *3 (W.D. Pa. Apr. 2, 2020) (despite being sympathetic to defendant's medical conditions, including asthma, speculation concerning possible future conditions in jail does not constitute a "compelling reason" for temporary release.); *United States v. Jones*, 2:19-CR-00249-DWA, 2020 WL 1511221, at *3 (W.D. Pa. Mar. 29, 2020) (holding that while the defendant suffered from hypertension, sleep

apnea, and asthma – respiratory issues making the defendant at a higher risk for COVID-19 – his present health conditions were not sufficient to establish a compelling reason for release in light of the danger to the community posed by his release and the efforts undertaken at the jail to combat the spread of the virus). I do not find Mr. Johnson's argument regarding his specific health issues to be sufficient to establish a compelling reason for release.

### B. SPECIFIC CONDITIONS IN THE PLACE OF DETENTION

"The Court is mindful that it bears a fiduciary responsibility to those that are detained in jails and prisons. The incarcerated look to the Courts for protection of their health, welfare and personal rights in general. However, the Courts are not on the front line. That space is rightly occupied by corrections officials and their administration."[5] The Chief Judge of this Court issued Standing Order 20-5 on March 25, 2020, requiring all detention facilities where persons are being held by order of this court to notify the Chief Judge and the judicial officer who signed the detention order if a federal detainee is in medical isolation or quarantine for any reason.[6] As of the filing of this Opinion, no notice has been received from the

---

[5] *United States v. Williams*, No. PWG-13-544, 2020 WL 1434130 (slip copy) (D. Md. Mar. 24, 2020).

[6] "…Further, each detention center shall promptly notify the Marshal for this District of any federal detainee who is in medical isolation or quarantine at their facility for any reason, promptly upon the entry of such detainee into such status. The Marshal shall then so notify the undersigned and the judicial officer who entered the Order of commitment of such status.

Columbia County Prison that Mr. Johnson is in medical isolation or quarantine for any reason.

The Government provided a memorandum from Columbia County Prison detailing the steps taken to protect inmates and staff from COVID-19. (Doc. 104-2, p. 1). These precautions seemed to be consistent with the CDC Guidelines for Detention Facilities.[7] The Pennsylvania Supreme Court issued an Order on April 3, 2020 directing each county president judge to work with the relevant stakeholders to fashion localized plans for dealing with COVID-19 in county jails:

> We DIRECT the President Judges of each judicial district to coordinate with relevant county stakeholders to ensure that the county correctional institutions in their districts address the threat of COVID-19, applying the recommendations of public health officials, including the CDC's Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (Mar. 23, 2020). If utilization of public health best practices is not feasible due to the population of the county correctional institutions, President Judges should consult with relevant county stakeholders to identify individuals and/or classes of incarcerated persons for potential release or transfer to reduce the current and future populations of the institutions during this health crisis with careful regard for the safety of victims and their communities in general, with awareness of the statutory rights of victims, and with due consideration given to public health concerns related to inmates who may have contracted COVID-19. Moreover,

---

The Clerk's Office is DIRECTED to transmit a copy of this Order to the U.S. Marshal, who shall advise each involved detention center of its content, and who shall provide a copy of same to each detention center and each relevant law enforcement agency."

Standing Order 20-5, https://www.pamd.uscourts.gov/news/standing-order-2020-005 (last accessed April 4, 2020).

[7] http://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/ guidance-correctional-detention.html.

consistent with these above considerations, President Judges are to undertake efforts to limit the introduction of new inmates into the county prison system.[8]

Mr. Johnson also argues that there has not been any testing of inmates at Columbia County Prison. He does not explain how not testing people without symptoms increases his risk while in custody. (Doc. 99, pp. 14-15).

There is nothing before this Court to indicate that any specific problem has developed at Columbia County Prison. The Government provided that as of April 16, 2020, there has been one (1) confirmed case of COVID-19 (a staff member who contracted the virus from a family member at home) at Columbia County Prison and eight (8) prison staff members were in quarantine. (Doc. 105, p. 1). All prison staff who were in direct contact with that staff member were quarantined. *Id.* at p. 2. As of April 17, 2020, the quarantined staff members were cleared to return to work. *Id.*

### C. NUMBER OF CONFIRMED CASES

Based on the evidence before me at this time, there is only one confirmed case of COVID-19 in Columbia County Prison and that was a staff member who contracted the virus from a family member at home. In all of Columbia County, where the prison is located, there are two hundred and twenty-five (225) cases and seven (8) deaths, as of 11:00 a.m. today (April 22, 2020). While these numbers are

---

[8] *In Re: The Petition Of The Pennsylvania Prison Society*, No. 70-MM-2020, slip op. at pp. 2-3 (Pa. April 3, 2020) (per curiam).

not guaranteed into the future, they do not suggest an immediate and unavoidable risk.

### D. EIGHTH AMENDMENT CONCERNS

Mr. Johnson also argues that his continued detention "may violate the Eighth Amendment's prohibition against cruel and unusual punishment." (Doc. 99, p. 13). In support of this argument, Mr. Johnson cites to *Helling v. McKinney*, 509 U.S. 25 (1993). In *Helling*, the plaintiff raised an Eighth Amendment claim because his cellmate smoked five packs of cigarettes per day. *Helling*, 509 U.S. at 35. The Supreme Court found that the plaintiff had sufficiently stated a cause of action for deliberate indifference to the plaintiff's exposure to environmental tobacco smoke. *Id. Helling* involved actual harm. Mr. Johnson's concerns regarding COVID-19 involve theoretical harm. Thus, I do not find that Mr. Johnson's Eighth Amendment argument warrants presentence release.

### E. RELEASE PLAN

Mr. Johnson requests release to home confinement with electronic monitoring. Mr. Johnson seeks release to third-party custodian, Tyesha Brewton. (Doc. 99, p. 13). Brewton resides in Erie County. *Id.* Moreover, even if released by this Court, Mr. Johnson is subject to a detainer from Michigan until February 7, 2021. (Doc. 104, p. 5, n. 1 and Exhibit A). This Court does not have jurisdiction to order Mr. Johnson be released from his Michigan detainer. However, even without

the detainer, balancing risk of flight and dangerousness against theoretical harm, I do not find that presentence release of Mr. Johnson is appropriate at this time.

IX. CONCLUSION

For all of the reasons set forth above, Mr. Johnson has failed to demonstrate that he should be released presentencing. Therefore, his Motion for Release (Doc. 98) will be denied. An appropriate order follows.


Date: April 22, 2020								BY THE COURT

										*s/William Arbuckle*
										William Arbuckle
										U.S. Magistrate Judge